CONNECTICUT ELECTRIC MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7549.   Promulgated May 13, 1927.

1. Assets determined, on the evidence, to have been set up on the books in 1914 at cost and should be included in invested capital.
2. Claim for depreciation of current inventories denied where there is no evidence of cost.

*Edward K. Nicholson, Esq.*, for the petitioner.
*Thos. P. Dudley, Jr., Esq.*, for the respondent.

This is a proceeding arising out of a determination of deficiencies in tax of $26,279 for the calendar year 1917, and $8,395.70 for the fiscal year ended June 30, 1919. Petitioner avers errors were committed with reference to the following issues: (1) The reduction of invested capital by the amount of $87,425 as of January 1, 1914, and (2) the refusal to allow depreciation in inventory in the amount of $11,806.58.

FINDINGS OF FACT.

The petitioner is a Connecticut corporation, organized in 1906 and engaged in the manufacture of about 2,500 finished articles

known as electric wiring materials for houses. Petitioner's first factory was located at Bantam, Conn. In 1912, the petitioner moved to Bridgeport, Conn., and erected and equipped there a factory building of the kind known as mill construction of brick and wood. The petitioner filed income-tax returns, Form 637, for the years 1909 to 1912, inclusive, showing, for each of the years, net income less than $5,000, and Form 1033 for the year 1913 showing net income $11,200. Prior to January 1, 1914, the books of account of the petitioner consisted of two ponderous accounts receivable ledgers. In January, 1914, the bookkeeper, who had been with the petitioner since January 1, 1913, and prior thereto with the firm of engineers and architects in charge of the construction of the petitioner's new building, opened a new set of books on the double entry system. The assets "Building and Real Estate" and "Machinery, Tools and Equipment," were valued at cost based on the bank checks in payment for them, and compared with invoices wherever available, with the single exception that the estimated amount of $10,000 was included for the Bantam property. Cash was entered at the actual balance on hand at the bank, and accounts receivable and notes receivable were taken from the previous accounts receivable ledger. The item of raw material and finished stock on hand was entered according to information furnished by Mr. Isaac Trumbull (deceased), then Treasurer of petitioner and in charge of financial matters, the office and sales. The liabilities were ascertained from the bank, as to the mortgage, and from the bills as to the other liabilities, with the exception of the officers' accounts, which were taken from the accounts receivable ledger. No additional liabilities as of January 1, 1914, were ever discovered. The opening entries as of January 1, 1914, were as follows:

January 1, 1914   Journal pg. 1.

The Connecticut Electric Manufacturing Co. of Bridgeport,, Conn., has this day changed its books from single to double entry and the following is a record of the assets and liabilities as taken from the company's papers and inventory furnished by I. B. Trumbull.

ASSETS.

| | | |
|---|---|---|
| Buildings and Real Estate (Inc. Bantam) 28 | | $107,300.00 |
| Machinery and Tools and Equip. (Inc. Office Furn.) 30 | | 26,879.92 |
| Cash on hand C. 5 | | 12,246.82 |
| Accounts Receivable (See Trial Balance) 56 | | 98,709.91 |
| Notes Receivable (See Act. in A Ledger) 53 | | 10,722.36 |
| Raw material on hand and Finished stock on hand 7 | | 69,980.00 |
| Capital stock (not issued) | $17,000  51 | |
| "        "    (not subscribed) | 125  51 | 17,125.00 |
| | | $342,964.01 |

LIABILITIES.

| | | | |
|---|---|---|---|
| Capital Stock    51 | | | $25,000.00 |
| Mortgage (City Savings Bank)    59 | | | 35,000.00 |
| Notes Payable | | | |
| City National Bank | $20,000. | 38 | |
| "        "        " | 15,000. | " | |
| Gen. Porcelain Co | 7,541. | " | |
| Eastern Mch. Screw Corp. | 2,275.55 | " | |
| Amer. Brass Co. (Ansonia) | 2,181.68 | " | |
| Amer. Brass Co. (Torrington) | 10,783.51 | " | 57,781.74 |
| A ⎫ | 3,718.33 | a | |
| B ⎬ Officers Accounts | 3,604.83 | b | |
| C ⎭ | 4,656.93 | c | 11,980.09 |
| Surplus and Undivided Profits | | 62 | 213,202.18 |
| | | | $342,964.01 |

On January 5, 1914, the petitioner's authorized capital stock was increased to $200,000 and a dividend payable in $192,125 par value of petitioner's capital stock was declared. This amount of par value was credited to capital stock and charged to surplus on the petitioner's books.

An inventory was taken June 30, 1916, and priced at selling prices. Inventories were thereafter taken on June 30 of every year, and were all priced at selling prices. A reserve was set up in 1917 of $25,000 to exclude unrealized profit in the inventory of June 30, 1917. Cost records were not kept from 1916 to 1919, inclusive, and the cost of the finished goods in the inventories is not known. The petitioner filed returns for the calendar year 1917 and a fiscal year ended June 30, 1919.

OPINION.

MILLIKEN: The first issue for consideration is whether the respondent was justified in reducing petitioner's earned surplus for invested capital purposes, by $87,425, because of an alleged overvaluation of its assets in 1914 when a new system of accounts was installed and new books of account opened. The petitioner commenced business in or about the year 1906, in a small plant at Bantam, Conn., with a total paid-in capital of $7,250. By 1912, the business had so increased as to necessitate the construction of a larger plant in and the removal of operations to Bridgeport, Conn. During this period and until January, 1914, the books of account were maintained upon the single entry basis, and were crude in their make-up and poorly kept. In January, 1914, a double entry system of bookkeeping was installed and new books of account opened under the new system of accounts. The first entries in the new books recorded the assets at an aggregate value of $342,964.01, the liabilities in the total sum of $104,761.83, and the net worth (capital and surplus) in

the amount of $238,202.18. Thus, if the opening entries in the new books correctly reflected the facts, the business had grown, in approximately seven years, from one with a net worth in 1906 of $7,250 to one having a net worth at the beginning of 1914 of $238,202.18, an increase of approximately $231,000. It is this very substantial increase in the net worth of the business which respondent questions, in view of the showing made by the petitioner in its excise and income-tax returns for the years 1909 to 1913, inclusive.

Each of the excise-tax returns which this petitioner filed for the years 1909 to 1912, inclusive, show a net income of less than $5,000, while the income-tax return which it filed for the year 1913 shows a net income of $11,200. Respondent, taking into consideration the fact that the business was begun in 1906 with a paid-in capital of but $7,250, coupled with the low earnings shown in the returns for five of the seven years intervening between 1906 and January, 1914, when the new books of account were opened, concluded that the increase of $231,000 in the net worth of the business, as shown by the opening entries in the new books, could not be accounted for by earnings, and that the asset values taken up on the new books of account must have included substantial appreciation or that the liabilities recorded thereon must have been substantially understated. Respondent, therefore, arbitrarily fixed the earnings of the period from the date business was commenced to January, 1914, at $15,000 per annum, the total of which is $87,425 less than the increase in the net worth for the same period as shown by the opening entries in the new books of account, and, accordingly, reduced the earned surplus for invested capital purposes by the said sum of $87,425.

We do not know what occasioned the substantial growth in the net worth of the business between 1906 and January, 1914. It may have been brought about entirely through earnings, though seemingly quite improbable, or in part through substantial contributions of capital. There is no evidence which sheds any light on that feature of the case. However, we do not think that is an important feature, since the evidence conclusively proves that the cost of assets set up on the new books of account in January, 1914, with the single exception of the estimated value of $10,000 assigned to the abandoned property at Bantam, Conn., may be properly recognized and accepted for invested capital purposes. Excepting the value assigned to the abandoned property, and probably the value of the merchandise inventory, the asset values entered in the new books of account were based upon actual costs; and the liabilities recorded therein represented all of the outstanding liabilities, no additional ones having been subsequently discovered. As to the value assigned to the merchandise inventory in 1914, relating to invested capital, we need have no concern, since whatever discrepancy it may have contained, either

understatement or overstatement, was offset by a compensating over-statement or understatement in the earnings of the preceding year.

We are satisfied that the amount of surplus shown was substantially correct, excepting the amount of $10,000 allowed for the abandoned plant, and are of the opinion that there is no warrant for a reduction to an amount greater than $10,000 of invested capital for 1917 and 1919, attributable to overvaluation in 1914 of earned surplus and undivided profits. Accordingly, the respondent is sustained for $10,000 and reversed for $77,425.

As to the second issue, there is no evidence of the cost of the inventories taken June 30, 1916, and June 30, 1917, and the respondent is sustained.

*Judgment will be entered on 15 days' notice, under Rule 50.*